May it please the court, good morning. I'm Brad Henry. I represent Mr. Smith in this appeal. Mr. Smith was convicted after a plea of guilty to pharmacy robbery and other offenses in an open plea and found to be a career offender under the United States sentencing guidelines and sentenced to the low end of the guideline range of that case. We have gone around this appeal one time previously prior to the Johnson decision in the U.S. Supreme Court. It was remanded to this court which subsequently remanded it to the district court where Mr. Smith was re-sentenced and found to be again a career offender not under the residual clause that time but under the force clause of the career offender guideline. We contend that Mr. Smith is not a career offender under any of the three now clauses of the career offender guideline that being the force clause, the enumerated offense clause or the now effective residual clause after the Beckler's decision by the U.S. Supreme Court finding that while a decision regarding a statutory interpretation of the ACA is different than the guideline interpretation of an agency decision making authority. And so I'll address those. Mr. Henry. Yes, Your Honor. Mr. Henry. To cut to the chase for me at least, I can't speak for my colleagues, our court previously albeit in an unpublished opinion but with respect to this particular defendant has ruled that it fits within the residual clause, right? That's correct. What law has changed to cause us to come to a different conclusion from that? I know that the law sort of changed for a while but it changed back. It was in quite a while. Now that it's changed and it's changed back, did it get morphed when it got changed back or do we have to reject what we, I mean this was a thoughtful reasoned decision that went through the precedents at that time. I'm not sure that I could see when reading it what precedents are different other than it wouldn't work if it were ACCA. Of course it wouldn't work if it were ACCA but it's not ACCA. Are you with me? I am. I'm totally with you. And the answer I think to your question is the law did not morph in a term but it did change in terms of prior to the Johnson decision there was a body of law, the U.S. Supreme which they had used to interpret the residual clause of ACCA in that instance and then courts have decided that ACCA then applied directly to career offender because the language was identical. But the U.S. Supreme Court in Johnson specifically overruled then Begay-Sykes. And so now what the court has said in Johnson is that the residual clause is a gobbledy but how is a court... They overruled them because of the void for vagueness doctrine in the Constitution. That's true. They subsequently said doesn't apply. That's right. So why doesn't that leave what's left other than what was unconstitutional rather than just sort of erase all that analysis just seems... I think they did erase that analysis. But it doesn't make sense to say that they did merely because they came to a conclusion based on a constitutional doctrine that doesn't apply in this case. Why doesn't that leave what's left? You know, you have 15, you take away 3, you put back 3, you still have 15, right? Fair point. Our contention is that... We would have to conclude that in order to rule for you. We would have to conclude that. Well... That all of that law that was used prior to Johnson could not be used now. I don't think... We would just have to start fresh for this category of cases without using that analysis unaffected by the void for vagueness doctrine. Well, I'm not conceding that those cases haven't been overruled and can or cannot be used. Even assuming, if you go back in time, that Begay and Sykes and the other cases interpreting the ACCA clause and how do you determine whether there's otherwise force sufficient to meet the residual clause, those cases even before this decision... By the way, the decision in this case is contrary to another number of... There's an inner circuit split, not only in the Sixth Circuit, but a number of other circuits around the country. But we would have to disagree with Judge Boggs' analysis though, right? You would. What you're arguing now is that he just got it wrong. I believe that's true. And I guess we could get into law of the case and all of that. That would be pretty abstract, but... I agree with that. Which part of it is wrong? Well, Your Honor, I think one of the arguments, and I think they brought it up in that opinion, was when you look at robbery under North Carolina common law, what are the elements that you have to meet to be able to be convicted of that? What we argued before, but didn't flush out probably as thoroughly as we did, I think, in this case, is what is the definition of fear? And is that fear of violent force, or are there other kinds of cases or other actions which define or are defined by and can constitute fear under common law robbery in North Carolina? You see the Fourth Circuit in a case where they talk about the force clause, but I think the analysis is very similar to the residual clause, where they cite a number of cases saying that the fear element of North Carolina common law robbery can be found. They give a situation where a person's hand was pushed off a cigarette packet. They give another one where an individual's shoulder was pushed and they tripped and fell into a bunch of shelves. They give one example where a person's bag was taken from a table where the other individual was standing on the other side of the table. There was no threat of force in that particular case. It was while there is some disagreement between the government and I about the purse snatching and what North Carolina law about that is. Some of this case law is getting fuzzy because it's fading into the background now. But some of it, as I remember, was that something could be analogous to burglary of a dwelling even though there was nobody in the dwelling because there was still the risk that just being there might engender some violent activity and that was sufficient risk to qualify. This doesn't robbery, even if all you're doing is pushing someone's hand around, lead to the possibility of violence in the same kind of sense that burglary of an unoccupied dwelling would have. On one hand, it could. On another hand, it couldn't. I give some examples in the brief of what common law robbery, when common law robbery was in place and it wasn't in statutory law under Lefebvre and some cases from the 1700s where, one example was a threat to raise somebody's property if they didn't do what the person wanted. It was basically an extortionary act if you looked at it under today's definition of law. Another was accusing someone of sodomy. You have to be in the presence of the person to do it, right? That's true. If you write them a letter, that wouldn't be robbery. But those threats, those threats, even if you are in the presence of a person which put a person in fear, not of physical injury, but of some other issue that caused them some harm, is sufficient under North Carolina law if you compile that along with the original understanding of common law in North Carolina and around the U.S. as it was at the time. You don't have to, it is not necessarily flowing from that that there will be or could be violence. You can meet the definition of common law robbery in North Carolina under their case law and under common law by threatening something other than actual physical force. So, and that was an argument we made at the first one. I think they cited that was a, I think he called it a creative argument. But I think going further than a creative argument, I think it's an actual real life argument that has some meat when you put it into the context of North Carolina Supreme Court precedent, then looking as the Gardner case in the Fourth Circuit last year to the Gardner case where the circuit court said that state appellate courts overruled state Supreme Court. It's kind of been interesting. They did say that it's the next best thing when you look at, you know, there are very few cases in the Supreme Court of North Carolina and really, I mean it makes sense because there's probably not that many of these kinds of cases that make it that far and actually get a decision. But when you're looking at a very limited scope of cases and how to interpret a very difficult area of law because you're looking back at what the common law was centuries later, you now get into a position to where the lower appellate court has a number of more decisions which have presidential value because they have presumably petitioned for a lot of things. So I'll... Thank you. May it please the court. My name is Luke McLaurin and I'm here on behalf of the United States. Mr. Smith's career offender sentence in this case should be affirmed because his prior conviction for North Carolina common law robbery qualifies as a crime of violence under any of the three prongs of the crime of violence definition in 4B1.2. Now I know Judge Rogers pointed out at the beginning that this case could easily be resolved by just relying on the residual clause and we think that's true. This case could be resolved by relying on the residual clause. But because there's been some discussion of that already, I want to start my discussion by focusing on the use of force clause and why we think it's important to resolve this case on that basis. The reason we think it's important is because we think there's some guidance that's needed to the lower courts here in light of the Fourth Circuit's decision in Garner that misinterpreted both North Carolina law and the federal use of force clause jurisprudence. And we think that helpful guidance could be provided by this court. When you look at North Carolina law, and if you actually look at it fully, which is not what the Fourth Circuit did in Garner, it's very clear that North Carolina law does require the level of force that is needed under the use of force clause. The Supreme Court in the first Johnson decision didn't set that level extremely high. All it did was put the level above mere offensive touching. It said that violent force includes force capable of causing physical pain or injury. And it expressly stated that it doesn't have to be the kind of force that even results in any injury at all. It's enough if it's force capable of causing pain, such as a slap in the face, a push of a hand, pulling of hair, hitting another. All of those things are violent force. The thing that Johnson was concerned about was the lowest level of force that had been allowed in the common law, the sort of unwanted or offensive touching. And what the Supreme Court said is that is not enough. But it didn't set a threshold so ridiculously high that causing pain to others can't meet it. In fact, the court was very clear. Violent force is force capable of causing pain. That is enough to count as violent force. And the North Carolina courts have been very clear that what is required under the statute is force that is sufficient to compel the victim to part with their property. In fact, I think a really key Supreme Court case that was not looked to by the Garner decision is State v. John, which is an 1857 North Carolina Supreme Court case that was cited in our brief. In that case, the court very specifically said that the force used must be of such nature as to show it was intended to overpower the party robbed or prevent his resistance to the taking and not merely to get possession of the property stolen. Now, if you look at that kind of language, as indeed other courts that have analyzed similar types of robbery statutes and similar types of robbery case law, they've said that when you look at that language, the only way that you can use force that is capable of overpowering somebody or preventing their resistance to the taking is by using force that is capable of causing physical pain or injury to another person. And I think one of the things that makes the use of force clause analysis somewhat complex, and I know that courts like to shy away from that recently, is because there is somewhat of a mess of the case law out there. In the last two years, there have been dozens of addressing whether robbery offenses count under the use of force clause in either the guidelines or in the Armed Career Criminal Act. And while it seems like it's a big mess out there, I think you can actually really identify a commonality in all of those cases. It's in fact a commonality that this court recently identified in its Yates decision, that the robbery offenses that don't count under the use of force clause are those robbery offenses that do count under them. If you actually look back at the common law, if you look at Lafayette, if you look at Blackstone, it was very clear that this idea of mere purse snatching, that was not enough. However, over time, some states managed to incorporate that mere purse snatching element into their basic robbery offense. And those states that have done so, those offenses do not count as violent felonies or crimes of violence. In fact, if you look at every single one of the recent circuit decisions saying a particular offense doesn't count as robbery, the reason they're doing so is because there is a state Supreme Court opinion saying, hey, mere purse snatching, that's enough. What we have in North Carolina is just the opposite. North Carolina has been very faithful to the common law and its interpretation of common law robbery. And it has explicitly rejected the notion that mere purse snatching can count as robbery. Again, going back to that State v. John decision from 1857, that case, interestingly enough, involved a slave who was sentenced to death for purse snatching. And despite the time that that opinion was issued, the court was so committed to the principle that purse snatching is not robbery that it rehearsed and vacated that conviction. It said, no, that's not enough. Mere purse snatching does not count as robbery. And if you look, the North Carolina Court of Appeals, in an appellate decision, a published appellate decision, said the exact same thing, State v. Robertson. And it relied on State v. John. It also relied on other North Carolina Supreme Court cases, State v. Parker, emphasizing that in a robbery case, the victim has to be induced to part with their property, which suggests a degree of force more than just an offensive touching. If you simply offensively touch somebody, you're not going to be able to induce them to part with anything. You have to touch them or threaten to touch them or use force in a way that is going to be capable of causing them pain or injury in order to induce them to part with their property. That's very thoughtful and interesting. I have sort of a meta question. You suggest that we rule on that basis rather than on the residual clause because it would help clarify the law in a confused area of the law. And when you said that, I just started wondering whether that's really consistent with the same kinds of jurisprudential concerns that underlie avoiding dictum. Now, if you have two bases that would equally rule in your favor, I'm wondering whether we should always or almost always use the easier one rather than the more difficult one, even though the more difficult one might be more instructive because if you're making law on the more difficult one, when there's some other argument that would have easily led to the same conclusion, you're in effect giving an advisory opinion and depriving the people who have a different view of the ability to appeal it because why should they spend the money appealing it when they're going to lose on the other issue? And why doesn't that sort of suggest to us as a principled matter that we should generally rule on the easiest way that leads to the conclusion that we're coming to? Well, I think the court does generally want to rule in the easiest way. And what I'd like to suggest to the court is, in fact, the use of force clause may be the easiest way because if you actually stop and think about it, the analysis involved By easiest, I mean the least subject to dispute. Well, I think the You think it's less subject to dispute once we understand it to do it under use of force rather than the residual clause. Is there some weakness to the residual clause analysis? Well, I think that the use of force clause analysis, the advantage it has is it's less analytically complex than either the enumerated offense clause analysis or the residual clause analysis. And I'd like to explain It sounded a little complex when you were going through it, though. We've got to go back to cases when they had slaves and everything. Well, in either case, you're going to, in any one of the three analyses, the use of force, enumerated offense, or residual clause, you're going to have to determine the meaning of the state statute. That involves going to case law. That doesn't change for either of them. What changes, though, is when you're in the use of force clause arena, the only thing you have to do after that is then compare it to the language of the use of force clause. In the enumerated offense context, what you have to do is you still have to determine what state law means, but then you have to determine, well, what is the generic version of robbery? And that's an issue that this court has not yet done. And that involves a complex analysis of its own. And only then, after you do that complex analysis, can you compare it. You get into the generic definition of robbery for an elements clause analysis. You don't need to do that for a residual clause, do you? Well, a residual clause analysis also has that same two-step thing, where you identify the offense of conviction, but then you have to engage in multiple steps there, actually. You have to then look at the offense of conviction. You have to determine, does that offense involve a serious potential risk of physical injury to another, which is another step in the analysis? And then you have to do a third step and say, is the risk involved in this particular offense similar to or of an equivalent nature to the risk involved in one of the enumerated offenses in the guidelines? So our position is that, yes, the enumerated offense clause and the residual clause involve a more complicated series of analyses. Now, to be fair, though, Your Honor, this Court's already done that analysis in the prior decision. So it may make, in this particular case, it might be easier to do the residual clause. But we think, particularly in light of the interpretive difficulties that lots of courts have raised regarding the residual clause, and in light of the fact that you have district courts in this circuit expressly disagreeing with the Fourth Circuit and Gardner in saying that North Carolina law means something different, we think this Court would provide a useful function by resolving that issue. However, the Court does not need, you're right, you're absolutely right, Judge Rogers, the Court does not need to address the use of force clause in this case, could affirm on the basis of one of the other two clauses. But the reason we're asking the Court to consider the use of force clause issue is because we think it is, in one way, analytically simpler, and also because we think it would provide useful guidance to the lower courts. And so getting back to that use of force clause issue, again, what you see in the case law is a distinction between robbery offenses that allow for mere purse snatching and ones that don't. North Carolina clearly falls on the side of the line that does not allow for mere purse snatching. You have North Carolina Court of Appeals decisions saying that. You have North Carolina Supreme Court decisions saying that. And so, and unfortunately, Gardner just didn't even consider any of those decisions. One thing I think is useful to point out as well is I want the Court to consider three other circuit decisions, Harris from the Tenth Circuit involving Colorado robbery, Doctor from the Fourth Circuit involving South Carolina robbery, excuse me, just two. Those two, I think, are very helpful because Harris, in analyzing Colorado robbery, it looked to Colorado state law and the way that Colorado had defined the offense of robbery. And some of the language Colorado used in talking about its common law robbery mirrors the language that the North Carolina courts use. And in fact, some of the crucial language that the Tenth Circuit relied upon, you find in the North Carolina cases. The Tenth Circuit was particularly persuaded by the fact that Colorado had repeatedly insisted that the gravamen of the offense was the violence used. Well, the North Carolina Supreme Court has said the exact same thing. If you look at the State v. Lawrence decision, which was cited in our brief, the Court said, unlike larceny, the gist of the offense of robbery is not in the taking, but in the force and terror used. That's very similar to the language that the Tenth Circuit found so persuasive in Harris. Same with Doctor. If you look at Doctor, it involves South Carolina common law robbery. And what's interesting in that case is the Court there actually relied on the South Carolina case using language that was word for word identical to the way that North Carolina has described North Carolina common law robbery in State v. Sawyer. Where they said that the fear that's required under the statute is such that the transaction must be attended with such circumstances of terror, such threatening word or gesture as in common experience are likely to create an apprehension of danger and to induce a property for the sake of his person. And I want to emphasize the for the sake of his person language, because that rebutts the creative argument that counsel made. It's a creative argument that you can maybe threaten other things besides bodily injury. It's just a wrong argument, because the North Carolina courts have been very clear that what has to be threatened is bodily injury. That you have to have an apprehension of danger to yourself, and you have to be willing to threaten your property for the sake of your person. You're not going to be doing that if you're not afraid that your person is going to be injured. And so for these reasons, we ask the Court to find that North Carolina robbery categorically qualifies under the use of force clause. However, as we've noted in our brief, we also think it fits squarely within the generic definition of robbery. Indeed, that's not surprising, because it is a common law robbery offense, and it has like the majority of jurisdictions, excuse me, North Carolina has like the majority of jurisdictions maintained the common law elements of robbery. And when you look at that generic, when you look at the way robbery is normally defined by most states, it's normally defined by most states in the way it had been defined a common law. Most states have sort of kept that tradition going on, and North Carolina fits within that majority. Why don't you think the Court didn't rely on that before our Court? The argument was made. It was simply not addressed in the opinion previously. And to clarify, the lower court in this case relied on the use of force clause and the enumerated offense clause. It made it ruling on both grounds. It didn't do so... It didn't use residual, because at that time the law was... At that time... ...doing detour. Yes, at that time, POWOC was still binding law. Unless the Court has any further questions, we rest on our briefs. Thank you.  Thank you, Your Honor. Just to address very quickly the argument that purse snatching is not the law in North Carolina. The government made a very forceful and thoughtful argument that there is a dividing line between those jurisdictions which find that the robbery there qualifies under force and those jurisdictions which find, like North Carolina, do not. And he said that that dividing line is purse snatching and that North Carolina is well settled in that particular area. However, two cases, North Carolina common law robbery is more broad than generic robbery because in the first case, State v. Smith, it's a 2011 North Carolina appellate court case. It's Lexus 250. It says robbery conviction was upheld where no threat or actual force where the defendant snatched a purse that was laying on a table near the victim. We've cited that... You're agreeing with Gardner that in North Carolina, courts of appeals can overrule the State Supreme Court, apparently. Well, I mean, I think they can upheld and... I recognize that under stare decisis, the Supreme Court makes the ultimate decision, but again, there's a second case in North Carolina from 2000 where again, they upheld a conviction for purse snatching. And so, not only do we have a situation here, and I think this is the point of Johnson when they found under a different standard for statutory interpretation, but these decisions about individuals who are convicted of crimes and found to be career offenders, just as a baseline policy, need to be taken very seriously and determined very carefully because you run in not only to problems with what sentences you give to an individual, which are wildly more severe than a person who is not found to be a career offender, that's true in this court, who is then required to look at the career offender guideline and make a proper determination, which is required by law, of the guidelines for which you must sentence a person to time in jail and take away their liberty based on these decisions, which the Supreme Court, even though they were not interpreting the career offender guideline, have said it is impossible to make any sense of the residual clause at all. And so you have notice and due process and the very foundations of our criminal law system are called into question when a court is required then to look at these decisions and make determinations about who qualifies and who does not qualify as a career offender, particularly in this instance where common law robbery, I could point out there is a circuit split, there and its court of appeals have said something different on numerous occasions about whether person hatching does or does not qualify as robbery. You've got an inner circuit split in this circuit alone between the Smith opinion and two or three other opinions, Carmichael and others, that were determined in this circuit. You've got inner circuit splits in other courts and if this court determines like the government suggests that it qualifies under the fourth clause, then you have a very clear circuit split and then the Supreme Court is then looking at a very clear circuit split there and there are a number of other circuit splits. You made a brief sort of policy argument that this analysis that you're challenging led to a really out of whack kind of sentence based on the crime in this case, is that true? It's not wildly out of whack for Mr. Smith, I will grant the court that. That's all I was asking, not that that ever makes any difference. But I will say that if the government is asking the court to instruct lower courts and to clarify the issue, to me the clarification in this case is impossible to get to and the Supreme Court has said as much. You cannot clarify this issue because it is so convoluted and difficult to determine what of the hundreds of thousands of crimes that are not only on the federal books but on the state books, how do you reconcile those under the residual clause as the court in this case previously suggested the other panel and as I assume this court will address. The sentencing commission has done away with the residual clause now, right? Or you think the whole career offender is a mess? Well I mean I think the whole career offender is a mess. I think the point you were making was that the residual clause was a mess. That's correct. They got rid of it so we're just stuck with it for a period of time now, right? I think that's true and they've made robbery now an enumerated offense which was not the case during this case in Canaply so the landscape is different but nonetheless it is still a difficult issue. Thank you, Your Honor. Thank you very much, Mr. Henry. We see you're appointed under the Criminal Justice Act and we appreciate your excellent argument today. Thank you. Thank you. The case will be submitted. Please call the next